## SALES OF INTOXICATING LIQUORS ON THE OHIO RIVER.

· Common Pleas Court of Columbiana County.

William Savors v. The State of Ohio.

Decided, March 6, 1909.

*Criminal Law,—Jurisdiction over Offenses Committed on the Ohio River—Sales of Liquor Opposite "Dry" Territory—Beal Law Does Not Confer Jurisdiction,to Punish on Account of such Sales—Section 4364-20a.*

The mayor' of a municipality, which has been voted "dry" under the Beal law, is without jurisdiction over a defendant who is charged with the sale of intoxicating liquor from a boat, anchored opposite such municipality, but outside of the low water line.

Hole, J.

In this case the plaintiff in error seeks to reverse the judgment of the mayor's court in the city of East Liverpool, which resulted in his conviction and sentence to pay a fine of two hundred dollars and costs.

The question which is raised in this case is one of extreme importance. It appears, without contradiction, that the plaintiff in error, William Savors, was the owner or keeper of a house-boat floating on the Ohio river at a point opposite Union street, one of the highways of the city of East Liverpool, in which boat it is alleged he unlawfully sold, furnished and gave away, or indirectly dealt in intoxicating liquors, contrary to the terms and provisions of the Beal Local Option Law. It appears from the evidence that the boat, at the period covered by the affidavit, was anchored in the river at a distance of sixty to eighty feet from the water's edge on the Ohio side of the river. That it was afloat in at least three feet of water, and was held in position by wire ropes extending from anchors to each corner of the boat, which anchors rested on the bed of the river, and that there were three or four floats extending from the water's edge on the Ohio side toward the boat as it so lay anchored in the

stream, and that these floats were entirely disconnected one with the other, but were near enough together for persons walking from the shore to the boat to step from one float to the other. The evidence in the record was clearly sufficient to justify the conviction of the plaintiff in error, if the traffic in intoxicating liquors was unlawful at the place where said boat was anchored.

It is clear from the evidence that this boat was anchored beyond low water mark on the Ohio side of the river, and it is clear from the records and decided cases that the territorial limits of Ohio only extend to ordinary low water mark on the Ohio side of the river.

Without going into the authorities at this time, it may be remarked that there are precedents, including one made by a homicide case in this county, that although the territorial limits of the state end at ordinary low water mark on the Ohio side, the jurisdictional limits of the state for the punishment of crimes and offenses extend entirely across the navigable portion of the Ohio river, though this jurisdiction for the punishment of crimes is exercised concurrently with the state of West Virginia and the state of Kentucky.

The Beal law which is alleged to have been violated in the case at bar, provides for submitting to the electors of a municipal corporation the question of prohibiting the sale of intoxicating liquors in such corporation, and when such election has been properly held and carried by the temperance forces, the sale of intoxicating liquors as a beverage shall be prohibited "within the limits of such municipal corporation."

During the progress of the argument it was admitted that the city authorities would have no jurisdiction to punish the violations of city ordinances, if the alleged offenses were committed on the river beyond ordinary low water mark. It was claimed, however, that this being a state law, that the state would have a right to punish offenses if committed within the jurisdictional limits of the state, although not within the limits of the municipality.

The importance of the question under the Beal law and especially under the Rose Local Option Law will be appreciated, if we keep in mind the fact that if the state has no power to punish

the sale of intoxicating liquors upon the river adjoining the various counties which have voted against the sale of intoxicating liquors, the practical administration of this great temperance measure will be defeated. So far as I know this question as affecting the administration of the Beal law has not yet been passed upon, but in the *Ohio Law Reporter* of March 1, 1909, (8 N. P.—N. S., 109), in the case of *The State of Ohio* v. *Frank Kendle,* it is held by Judge Corn, of the Court of Common Pleas of Adams County, that the courts of Ohio have jurisdiction of crimes and offenses committed on Ohio river opposite its shores, and this is so although the statute defining the offense makes it unlawful to do the act within the limits of any county where prohibited. That case holds squarely that under the Rose law a party selling liquor in a boat on the Ohio river outside of ordinary low water mark on the Ohio side may be punished for violation of the Rose law. In that case the grand jury returned an indictment charging a violation of the Rose law, and the state and the defendant waived a jury and submitted the matter to the court upon an agreed statement of facts, which, for the purposes of the question involved, are practically identical with the case at bar, except as I have indicated, that in the case at bar the affidavit is filed under the Beal law instead of the Rose law.

As I have said before, there is precedent for the claim that Ohio has a right to punish the commission of crimes and offenses committed against the laws of the state, though the occurrence takes place on the Ohio river outside of the territorial limits of the state. The difficulty in determining questions under the Rose law and under the Beal law, however, arises from the fact that the sale of liquor is not a crime except when committed in such portions of the state as have voted against it under the provisions of one of these two laws, or under what is known as the township local option law.

If this was a question of the sale of liquor upon Sunday, the sale of liquor to habitual drunkards, or the sale of liquor to minors, there is precedent for the claim that the offense could be punished, and the court, in administering the law, would consider the offense as having been committed in the county bound-

ing upon the river nearest to the place where the crime was committed. But where the peace and dignity of the state of Ohio is not infringed upon, unless the traffic in liquors is committed within certain prescribed limits, it may seriously be doubted whether, by any fiction of law, we can extend the limits of a county or a municipality for the purpose of branding as criminal an act which would be entirely innocent and lawful if committed in what is generally known as wet territory of the state.

However, if the case at bar arose under the provisions of the Rose bill, I should be inclined to lay aside my doubts and accept the precedent set by Judge Corn until the higher courts of the state have passed upon the question, in order that no one might be encouraged to continue a traffic which is clearly so contrary to the interests and will of the inhabitants of territory which has voted against the sale of intoxicating liquors.

But can we go farther than this and hold that the same principle can be applied to the Beal law? Under that law, as I have indicated, the traffic in intoxicating liquors, to be illegal, must be carried on within the limits of such municipal corporation; and I have not been able to persuade myself, much as I would like to do so, that we can, by any fiction of law, say that a sale of liquor made outside the limits of such corporation is an offense against the laws of the state. It may be said that there is very little difference in principle between the Rose law, which forbids the traffic in intoxicating liquors within the limits of any county which has voted it out, and that which forbids such traffic in the limits of any city where it has been voted out. There is this difference, however: The county is that unit of the state which has been selected by the state through which to exercise its machinery for the punishment of crime, and as the jurisdictional limits of the state extend across the river, we might, by a fiction of law, say that the jurisdictional limits of the county likewise extended across the river. But I can see no reason why the jurisdictional limits of a municipality shou'd, for any purpose, extend beyond its territorial limits, unless such additional jurisdictional limits have been prescribed by statute.

Having this view of the case, it is the judgment of this court that the judgment of conviction in the mayor's court must

be reversed, and the plaintiff in error restored to all things he has lost by reason of such conviction.

Before concluding this opinion, however, I feel like suggesting that in my judgment the Legislature would have a clear right to pass an act providing, in express terms, that whenever, under any local option law, any municipal corporation, township or county, has made the traffic in intoxicating liquors unlawful, that it shall likewise be unlawful for such traffic to be carried on in or upon such portions of the water of any navigable stream forming the boundary line between the state of Ohio and any other state opposite to or bounded upon the territory in which the sale of liquor has, under the terms of any such local option law, become unlawful. If such an act were passed, it would, in my judgment, resolve any doubt which now exists as to the right of the state to punish in cases like the one at bar, or in cases for the violation of the township or county local option laws.

Most of the cases holding that Ohio has concurrent jurisdiction over the waters of the Ohio river with the state south of this river, are civil cases, and the right of the state to punish crimes committed on the river outside of ordinary low water-mark has never been declared, so far as I know, by the Supreme Court of this state, or by the Supreme Court of the United States, though both these tribunals have recognized this concurrent jurisdiction in civil cases. As I have said, however, there are precedents in the lower courts which recognize such right. In criminal cases the indictment in charging the venue must name the county in which the offense was committed, and it may well be doubted whether the venue is properly proven where it appears that the offense was committed in territory not within the limits of the county, but in territory of another state over which this state only has concurrent jurisdiction by virtue of a compact between the states. If this were a new question I should be inclined to hold that the state should pass legislation definitely providing for the punishment of offenses in this "twilight land," and fixing the proper place for the prosecution of offenses committed therein.